**Kline E. GOEDERS, Appellant,**

v.

**Thomas E. HUNDLEY, Appellee.**

No. 94–3260.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1995.

Decided June 27, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 7, 1995.

---

74

Paul J. Papak, Federal Public Defender, Cedar Rapids, IA, argued (Nicholas Drees, on the brief), for appellant.

Thomas D. McGrane, Asst. Atty. Gen., Des Moines, IA, argued, for appellee.

Before MAGILL, LOKEN, and MURPHY, Circuit Judges.

MAGILL, Circuit Judge.

Kline E. Goeders appeals the district court's [1] dismissal of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, based on ineffective assistance of counsel. Because we find that the district court did not abuse its discretion in dismissing the petition, we affirm.

## I. BACKGROUND

On April 23, 1977, Warren Clark was shot to death in the basement of the hotel where he lived and worked. The murder was not solved until 1986, when Terri Goeders, defendant Kline Goeders' ex-wife, contacted police to report her ex-husband as the killer. The police arranged an audiotape monitor for her telephone, and after hearing two conversations between Terri and Kline Goeders which implicated Goeders in Clark's murder, Goeders was arrested for the murder.

During jury selection for Goeders' trial, one of the jurors, Lyman Hurlburt, replied in voir dire that his ex-wife was the victim's niece. Jurors were selected by Goeders' counsel in consultation with Goeders; Goeders did not suggest that Hurlburt be further questioned or that he was an inappropriate or biased juror. Hurlburt was selected as a juror and seated.

Goeders was tried, and on November 20, 1986, after a nine-day trial, the jury returned

1. The Honorable Charles R. Wolle, Chief Judge, United States District Court for the Southern District of Iowa.

a verdict finding Goeders guilty of first degree murder. He was sentenced to life imprisonment.

In June 1987, Goeders petitioned for postconviction relief in the county district court. Counsel was appointed, and in August 1991, after various amendments to the petition, the county district court held a hearing on Goeders' claim of ineffective assistance of counsel and subsequently denied his petition for postconviction relief.

In October 1993, after exhausting state postconviction remedies, Goeders filed a petition for writ of habeas corpus in federal district court, based on the claim of ineffective assistance of counsel. The district court dismissed his petition, and he now appeals.

## II. DISCUSSION

We review the determination that counsel was not ineffective de novo because the issue of ineffectiveness of counsel is a mixed question of law and fact. *Flieger v. Delo*, 16 F.3d 878, 886 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 355, 130 L.Ed.2d 309 (1994).

A claim of ineffective assistance of counsel has two components: First, the defendant must show that counsel's performance was deficient, and second, the defendant must show that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1983). The Supreme Court has further stated, however, that

> a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Id.* at 697, 104 S.Ct. at 2069. We therefore turn to the question of prejudice.

### A. Prejudice

"[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067. To show prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

Goeders has not shown a reasonable probability that the result of the proceeding would have been different had Hurlburt not been on the jury.

### 1. Actual Bias

■ Goeders' claim of ineffective assistance of counsel is grounded in the claim that counsel failed to strike a biased juror. To maintain a claim that a biased juror prejudiced him, however, Goeders must show that the juror was actually biased against him. *See Smith v. Phillips*, 455 U.S. 209, 215, 102 S.Ct. 940, 945, 71 L.Ed.2d 78 (1981). Goeders has not shown that Hurlburt was actually biased, and thus has failed to show that Hurlburt's presence on the jury prejudiced him.

■ We give great deference to the determinations of state courts, both trial and appellate, that jurors are not biased. "In habeas proceedings, the determination by the trial judge that jurors are qualified is subject to a presumption of correctness," *Snell v. Lockhart*, 14 F.3d 1289, 1294 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 419, 130 L.Ed.2d 334 (1994), and we presume that the factual findings of state courts, both trial and appellate, are correct, *Flieger*, 16 F.3d at 886, setting aside the state factual determination only if it lacks fair support in the record, *Rushen v. Spain*, 464 U.S. 114, 120, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983). Further, we presume that the jury acts according to law. *Snell*, 14 F.3d at 1301.

Defendant argues, citing *Phillips*, that we should find "implied bias," and thus that he need not show actual bias. *Phillips*, however, supports the opposite proposition: that Goeders must show actual bias. In *Phillips*, the Supreme Court examined cases treating

claims of implied juror bias, and rejected implied bias in cases of alleged juror bias. 455 U.S. at 215–17, 102 S.Ct. at 944–46. Instead, "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Id.* at 215, 102 S.Ct. at 945. Just such a hearing was held by the state court on post-conviction review in this case, and, on the basis of this hearing, the state court denied Goeders' petition for postconviction review. Although the order denying postconviction review is unfortunately not in the record before this Court, it is clear from the transcript of the hearing that the central issue before the state court was whether Hurlburt was biased. Because Goeders' claim on review was that his counsel was ineffective in conducting voir dire, and because this claim was based entirely on the premise that Hurlburt was biased, we assume that the state court made the finding necessary to the denial of Goeders' ineffective assistance claim: that Hurlburt was not actually biased.

■ Hurlburt repeatedly asserted at the hearing that he was able to, and did, return a fair and unbiased verdict:

THOMAN [State counsel]: Do you remember some of those questions [Goeders' counsel] asked you [at voir dire]?

HURLBURT: Yes. He asked me if I had been—he asked me if I knew Warren Clark's family at the time.

THOMAN: Right, those kinds of questions. Do you remember you were also asked by myself and the defense attorney during jury selection whether there was any reason you could not return a fair verdict based strictly on the evidence?

HURLBURT: Yes. I remember that question.

THOMAN: And what was your response?

HURLBURT: I responded that I could give a fair response.

THOMAN: And, in fact, did you?

HURLBURT: Yes. I felt I did, yes.

THOMAN: As you sit there now and examine your thoughts, do you feel that your familiarity with Mr. Clark for nine years before that, and other members of his family, had any impact on your verdict?

HURLBURT: No.

Hearing Tr. at 15. We, in general, credit the testimony of the juror alleged to be biased regarding the impartiality of his verdict:

"Respondent correctly notes that determinations made in [actual bias] hearings will frequently turn upon testimony of the juror in question, but errs in contending that such evidence is inherently suspect.... '[O]ne may not know or altogether understand the imponderables which cause one to think what he thinks, but surely one who is trying as an honest man to live up to the sanctity of his oath is well qualified to say whether he has an unbiased mind in a certain matter.'"

*Phillips*, 455 U.S. at 217 n. 7, 102 S.Ct. at 946 n. 7 (quoting *Dennis v. United States*, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950)). Hurlburt stated that he said that he could return a fair verdict, and that he did return a fair verdict. The state court apparently credited this testimony, as it denied Goeders' petition for postconviction relief after the hearing. If a state court's conclusions regarding a juror's impartiality are fairly supported by the record, we will not overturn them on habeas review. *Snell*, 14 F.3d at 1294. Hurlburt's testimony at the hearing fairly supports the state court's implied finding that Hurlburt was not biased, and we find no reason in the record to doubt the honesty of Hurlburt's testimony. Further, there is nothing in the record to indicate that the trial court questioned Hurlburt's seating on the jury; it appears from all accounts that, after voir dire, Hurlburt was seated without comment from the court.[2]

2. In addition, we note that Goeders himself acquiesced in the selection of Hurlburt for the jury, giving no indication that he perceived Hurlburt as biased at that time. Defense counsel and Goeders went through the list of jurors and made selections together, and Goeders voiced no objection to the inclusion of Hurlburt, nor did he request that his counsel investigate further into Hurlburt's relationship with the victim. "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066.

The litany of connections between Hurlburt and the victim recited by defendant is not sufficient to show actual bias in light of Hurlburt's testimony of impartiality and the state court's crediting of that testimony. At the postconviction hearing, the information was elicited that, in addition to Hurlburt's ex-wife being the victim's niece: Hurlburt lived next door to the victim for three to six months; Hurlburt went to the victim's funeral; Hurlburt taught the victim's children at the school where he was a teacher, although he was not sure how many children the victim had; he saw or spoke to the victim occasionally; he had met the victim's wife a few times; and he frequently met with the victim's sister, not because of the familial relationship, but because she ran a cafe he frequented.

This murder took place in Pocahontas, Iowa, which is not a large town. Hurlburt taught at the Fonda Community School, where presumably all Pocahontas children went to school. He testified at the hearing that some of the other jurors knew of his previous relationship with the victim because "some I was acquainted with on the jury knew, I guess, my family background and so forth." Hearing Tr. at 12. His connections with the victim were those which many people in the town of Pocahontas may have had; they were hardly connections unique to a familial relationship, especially in a town in which, of a jury of twelve, several knew Hurlburt and his family history.

In addition, nine years had passed since the 1977 murder when Goeders went to trial in 1986. Hurlburt and his wife had gotten divorced in 1983. It was entirely likely that Hurlburt was able, as he testified, to approach the evidence impartially nine years after the murder, especially when his connection to the victim's family had been severed three years before the trial. He testified at the hearing that his contact with the members of his wife's family was considerably lessened after the divorce, Hearing Tr. at 14, and that his contact with the victim's sister was through her cafe, not through the family relationship. In this context, Hurlburt's testimony that he gave an unbiased verdict is credible, and we find that Goeders has failed to show that Hurlburt was actually biased against him.

The district court therefore properly deferred to the state court's determination, fairly supported by the record, that Hurlburt was not actually biased.

## 2. Evidence Against Goeders

Finally, we note that, regardless of Hurlburt's impartiality, the case against Goeders appears, from the limited record before us, to have been very strong. Tapes and transcripts of telephone conversations between Goeders and his ex-wife, in which the murder was discussed, and in which Goeders did not deny killing Clark, were admitted into evidence. Goeders' ex-wife testified that she saw Goeders in the hotel with Clark, holding a gun to Clark's head, heard a gunshot while they were out of view, and a few seconds later, saw Goeders come out of the hotel with the gun. She further testified that, a few days later, she overheard Goeders telling someone else that he had killed a man. See Appellant's Br. for No. 86–1844, Supreme Court of Iowa at 12–14, 22 (Oct. 12, 1987).

This evidence against Goeders is so strong that the outcome of this case could hardly have been other than a verdict of guilty, and therefore Goeders has not shown that Hurlburt's presence on the jury had an effect on the result in this case.

### B. Performance

Because we find that Goeders has failed to show prejudice resulting from counsel's retaining Hurlburt on the jury, we decline to address the question of counsel's effectiveness. See Strickland, 466 U.S. at 697, 104 S.Ct. at 2069.

### III. CONCLUSION

We affirm the district court's dismissal of Goeders' petition for a writ of habeas corpus because Goeders has failed to show that he was prejudiced by the seating of a juror who was in the past related to the victim by marriage.