# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 07-1109/2282

_____

| | | |
|---|---|---|
| Corey Sanders, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeals from the United States |
| | * | District Court for the Eastern |
| Larry Norris, Director, Arkansas | * | District of Arkansas. |
| Department of Correction, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  March 10, 2008
Filed:  June 16, 2008

_____

Before MURPHY, ARNOLD, and BENTON, Circuit Judges.

_____

ARNOLD, Circuit Judge.

This is a habeas corpus case.  An Arkansas jury convicted the petitioner, Corey Sanders, of two counts of capital murder and the trial judge sentenced him to two terms of life imprisonment without parole.  The Supreme Court of Arkansas upheld his conviction on appeal, *Sanders v. State*, 340 Ark. 163, 8 S.W.3d 520 (2000), and rejected the claims that he made in post-conviction proceedings, *Sanders v. State*, 2003 WL 22351933 (Ark. 2008).  When the district court[1] denied the petition that

_____

[1]The Honorable J. Thomas Ray, United States Magistrate Judge for the Eastern District of Arkansas, sitting by consent of the parties.  *See* 28 U.S.C. § 636(c); *see also*

Mr. Sanders filed for relief under 28 U.S.C. § 2254, he appealed to us and then filed a motion under Federal Rule of Civil Procedure 60(b) in the district court. When the district court denied this motion, Mr. Sanders filed a second appeal. We have consolidated the two appeals.

Mr. Sanders's appeals raise four issues. He maintains that the district court should have appointed counsel for him; that his trial counsel was ineffective for failing to obtain disqualifying information about juror Randy Reed and having him removed from the jury; that the district court should have construed his *pro se* petition to include a claim that Mr. Reed's dishonesty during voir dire deprived him of his constitutional right to a fair trial; and that the district court erroneously construed parts of his Rule 60(b) motion as a successive habeas petition. The district court granted Mr. Sanders a certificate of appealability on his ineffective-assistance claim and we gave him a certificate on the issue of whether the district court misinterpreted his Rule 60(b) motion. Mr. Sanders did not request a certificate of appealability as to his contention that his § 2254 petition included a claim that Mr. Reed's dishonesty deprived him of a fair trial.

## I.

Mr. Sanders does not need a certificate of appealability to challenge the district court's denial of his motion for appointment of counsel. *Morris v. Dormire*, 217 F.3d 556, 558 (8th Cir.2000), *cert. denied*, 531 U.S. 984 (2000). When Mr. Sanders filed his § 2254 petition, he also asked the court to grant him *in forma pauperis* status and to appoint counsel for him. Although the district court allowed Mr. Sanders to proceed *in forma pauperis*, the court denied his request for counsel after taking into account the relevant considerations, *see McCall v. Benson*, 114 F.3d 754, 756 (8th Cir. 1997). Having carefully reviewed the record, we conclude that the court's denial of counsel was not an abuse of discretion. *See id.*

---

Fed. R. Civ. P. 73.

## II.

Mr. Sanders argues that the district court erred in not construing his petition to include a claim that Mr. Reed's conduct during voir dire deprived him of the right to the fair trial that the sixth amendment guarantees him. This supposed claim centers on Mr. Reed's silence when the judge who tried Mr. Sanders's case asked the members of the venire whether they knew anything about the facts of the case, whether they were related to any of the parties by blood or marriage, and whether they could be fair and unbiased. It turns out, as we shall see in our discussion of Mr. Sanders's ineffective-assistance claim, that Mr. Reed failed to be completely candid in answering questions during voir dire. But Mr. Sanders did not raise the issue of Mr. Reed's failure to respond to these questions as a ground for relief in state court, a prerequisite for obtaining federal habeas relief where, as here, the petitioner shows neither cause and prejudice for the default nor that a failure to consider the claim would result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

As we have said, Mr. Sanders did not ask for a certificate of appealability on this claim. Although we may issue a certificate *sua sponte* in appropriate circumstances, *see United States v. Morgan*, 244 F.3d 674, 674-75 (8th Cir.2001) (en banc), *cert. denied*, 534 U.S. 825 (2001), we cannot do so here since the claim is defaulted, *see Langley v. Norris*, 465 F.3d 861, 862-63 (8th Cir. 2006), and we therefore dismiss the claim for lack of jurisdiction.

## III.

After the district court entered its judgment denying Mr. Sanders's petition, he filed a motion for relief from judgment under Rule 60(b), attaching new evidence in support of his claims. The district court denied the motion, holding that it was the equivalent of a successive petition for habeas corpus and thus required our authorization before it could be filed. The district court was entirely correct in this. A motion of this sort filed in a proceeding under 28 U.S.C. § 2254 must be treated as

successive if, as here, it "seek[s] leave to present 'newly discovered evidence' ... in support of a claim previously denied." *Gonzalez v. Crosby*, 545 U.S. 524, 531 (2005) (quoting Fed. R. Civ. P. 60(b)(2)). And we decline to authorize Mr. Sanders to file such a successive petition. *See* 28 U.S.C. § 2244(b)(3). Even if, as the district court opined, Mr. Sanders's new evidence, had it been presented before judgment, might well have led the district court to grant his initial habeas petition, we cannot authorize the filing of a new petition because the new evidence does not establish that but for the claimed error "no reasonable factfinder would have found [Mr. Sanders] guilty of the underlying offense." 28 U.S.C. § 2244(b)(2). Mr. Sanders's new evidence has nothing to do with his guilt or innocence, so he cannot file a successive habeas petition.

## IV.

Mr. Sanders's final claim is that his counsel was ineffective in failing to ask Mr. Reed questions on voir dire that would have revealed that he was not qualified to sit on the jury. All now concede that Mr. Reed was the coroner of Columbia County, Arkansas, that he was present in that capacity when the police recovered the bodies of the victims of the crimes for which Mr. Sanders was tried, that he arranged for autopsies of the bodies, and that, as a mortician, he conducted the funeral of the victim to whom he was distantly related by marriage.

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a writ of habeas corpus on any claim decided by a state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d). Here the Arkansas Supreme Court applied the United States Supreme Court's well-settled standard for ineffective-assistance claims, which requires a defendant to show that counsel's

-4-

performance was professionally deficient and that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The district court held that the post-trial hearing record did not establish that counsel had reason to know of Mr. Reed's potentially disqualifying circumstances or that Mr. Reed had revealed his occupations on the questionnaire that the trial court required prospective jurors to fill out before trial, and therefore the Supreme Court of Arkansas had not acted unreasonably in holding that Mr. Sanders's counsel had not been professionally deficient. Mr. Reed testified at the post-conviction proceeding that he couldn't remember whether he had filled out a questionnaire or not, but that, if he had, he would have included his occupations. The new evidence that Mr. Sanders presented in support of his Rule 60(b) motion in fact included a jury questionnaire that Mr. Reed had filled out, and in it he did indeed reveal his occupation as coroner and mortician. But that evidence was not before the state courts, was not before the district court in the habeas proceeding, and is not before us.

We are somewhat troubled by the Arkansas Supreme Court's conclusion that the performance of Mr. Sanders's counsel was not professionally deficient. A careful parsing of the supreme court's ruling reveals that it may well have been "based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), namely that Mr. Sanders's counsel did not have reason to know of Mr. Reed's potentially disqualifying circumstances. The Arkansas Supreme Court found that counsel "did not see" that Mr. Reed was the coroner, thus implicitly finding that Mr. Reed had indeed filled out the jury questionnaire and did disclose that he was the coroner, and Mr. Sanders's counsel himself testified, "I missed it," referring to Mr. Reed's occupation. This is not, of course, contrary to the state supreme court's other finding that counsel was not on notice. But in the reasonable exercise of professional diligence counsel would have been on notice because he should have seen the questionnaire, and, given the supreme court's implicit finding that the questionnaire contained potentially disqualifying information, it might well have been legally

-5-

unreasonable for the supreme court to conclude that counsel's performance was professionally reasonable.

But to prevail on his claim, it is not enough for Mr. Sanders to show that his counsel's performance was deficient: He must also show that counsel's deficient performance prejudiced him. Normally, this requires a showing that there is a reasonable probability that the outcome of the trial would have been different but for the deficient performance, a standard that Mr. Sanders cannot meet. *See Strickland*, 466 U.S. at 694. We have held, however, that some professional failures of counsel, including the failure to strike a biased juror, *Johnson v. Armontrout*, 961 F.2d 748, 754-56 (8th Cir. 1992), result in structural errors that are presumed prejudicial, *see also McGurk v. Stenberg*, 163 F.3d 470, 473-75 (8th Cir. 1998); *cf. United States v. Cronic*, 466 U.S. 648 (1984), and Mr. Sanders contends that his attorney's failure to question Mr. Reed properly resulted in a structural error: Mr. Sanders maintains that Mr. Reed was a biased juror and thus counsel's failure to remove him from the jury resulted in Mr. Sanders being denied his sixth amendment right to an impartial jury. He further contends that because an impartial jury is fundamental to a fair trial and the consequences of its being denied "are necessarily unquantifiable and indeterminate," *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993), the error caused by his counsel is structural and presumed prejudicial. *See Johnson*, 961 F.2d at 754-56; *cf. Rose v. Clark*, 478 U.S. 570, 577-78 (1986).

Mr. Sanders's argument is premised on Mr. Reed's partiality, but the state trial court, after holding a hearing in his post-conviction proceeding, found nothing in the record to "suggest that [Mr. Reed] was an unfair, partial, or biased juror." The state supreme court, after citing authority for the principle that jurors are "presumed unbiased," concluded that Mr. Sanders had failed to meet his burden of showing "actual bias." *Sanders*, 2003 WL 22351933, at * 3 (citing *Lee v. State*, 343 Ark. 702, 720, 38 S.W.3d 334, 345 (2001), *mandate recalled on other grounds*, 367 Ark. 84, 238 S.W.3d 52 (2006)). We believe that the context of the court's conclusion shows

that it was a finding that Mr. Reed was not biased. *See Baca v. Sullivan*, 821 F.2d 1480, 1483 (10th Cir. 1987); *see also Patton v. Yount*, 467 U.S. 1025, 1036 (1984). Since Mr. Sanders has no clear and convincing evidence to the contrary, we must accept the state court's factual finding that Mr. Reed was not actually biased. *See* 28 U.S.C. § 2254(e)(1); *Nicklasson v. Roper*, 491 F.3d 830, 834 (8th Cir. 2007), *cert. denied*, 76 U.S.L.W. 3568 (U.S. April 21, 2008).

Mr. Sanders maintains, however, that the connections between Mr. Reed and his criminal case create a legal presumption of bias. Implied or presumed bias means "a bias attributable in law to the prospective juror regardless of actual partiality." *United States v. Wood*, 299 U.S. 123, 134 (1936). Our case law, however, is inconsistent as to whether juror bias may ever be presumed. *Compare Goeders v. Hundley*, 59 F.3d 73, 75-76 (8th Cir. 1995), *and United States v. Kelton*, 518 F.2d 531, 532 (8th Cir. 1975) (per curiam), *with Fuller v. Bowersox*, 202 F.3d 1053, 1056-58 (8th Cir. 2000) *and Johnson*, 961 F.2d at 756. In *Kelton*, 518 F.2d at 532, we said that our court had "rejected the *per se* theory of implied bias in favor of a requirement that actual prejudice be demonstrated" (internal quotation marks omitted). Like Mr. Sanders, the habeas petitioner in *Goeders*, 59 F.3d at 75, claimed that his counsel was ineffective for failing to strike a biased juror. We held that the petitioner had to show actual – not implied – bias, relying on the Supreme Court's statement in *Smith v. Phillips*, 455 U.S. 209, 215 (1981), that "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *See Goeders*, 59 F.3d at 75-76; *see also Mack v. Caspari*, 92 F.3d 637, 642 (8th Cir. 1996), *cert. denied*, 520 U.S. 1109 (1997). Of course, if bias may never be presumed, Mr. Sanders's claim fails.

But we have said in other cases that a juror may sometimes be presumed biased, *see Fuller*, 202 F.3d at 1056-58; *Johnson*, 961 F.2d at 756, and, as discussed later, a significant number of circuits have adopted the doctrine of implied bias. In *Johnson*, the habeas petitioner contended that his trial counsel was ineffective for failing to have

several members of the jury stricken for cause; though we found that the petitioner was entitled to relief because two of the jurors were biased in fact, we added that "even without a showing of actual bias, prejudice may be implied in certain egregious situations." *Id.* As support for the doctrine of implied bias in *Johnson*, *id.*, we cited a concurring opinion in *Phillips*, 455 U.S. at 222 (O'Connor, J., concurring). (As we have said, we relied on *Phillips* to reject the doctrine of implied bias in *Goeders*, 59 F.3d at 76.) We again accepted the doctrine of implied bias in *Fuller*, 202 F.3d at 1056-58, though we concluded that the facts did not support the presumption or prejudice and thus denied the habeas petitioner's claim that a biased juror deprived him of a fair trial. In *Fuller, id.*, we cited but did not discuss the Supreme Court's decisions in *Phillips* and *Wood*, which states that the "bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as a matter of law," *Wood*, 299 U.S. at 133.

We need not resolve the apparent inconsistency in our cases, however, to decide Mr. Sanders's claim. Nor do we have to decide whether AEDPA applies by determining whether the state court adjudicated the question of presumed bias "on the merits." *See* 28 U.S.C.A. § 2254(d). For even if we ignore the strictures of AEDPA and assume, without deciding, that juror bias may sometimes be presumed as a matter of law, we conclude that the circumstances here cannot support such a presumption.

In those circuits that recognize the principle of implied bias, resort to it has been limited "to those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Person v. Miller*, 854 F.2d 656, 664 (4th Cir.1988); *see also Fields v. Brown*, 503 F.3d 755, 768-69 (9th Cir. 2007) (en banc). When determining whether bias should be presumed, courts often refer to Justice O'Connor's concurring opinion in *Phillips*, 455 U.S. at 221-23 (O'Connor, J., concurring). *See, e.g., United States v. Tucker*, 243 F.3d 499 (8th Cir. 2001); *Conaway v. Polk*, 453 F.3d 567, 585-87 (4th Cir. 2006); *United*

*States v. Frost*, 125 F.3d 346, 279-80 (6th Cir. 1997); *Hunley v. Godinez*, 975 F.2d 316, 318 (7th Cir. 1992); *Fields*, 503 F.3d at 768 n.6; *Burton v. Johnson*, 948 F.2d 1150, 1158 (10th Cir.1991). Though we interpreted *Phillips* as rejecting the doctrine of implied bias in *Goeders*, 59 F.3d at 75-76, Justice O'Connor viewed it differently in *Phillips*: After concurring in the Court's opinion, Justice O'Connor wrote "separately to express [her] view that the opinion does not foreclose the use of 'implied bias' in appropriate circumstances." *Phillips*, 455 U.S. at 221 (O'Connor, J., concurring). She believed that some "exceptional" or "extreme situations" cast such doubt on a juror's impartiality that even if a state court found " 'no bias,' the Sixth Amendment right to an impartial jury should not allow a verdict to stand," and she provided examples: "a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *Id.* at 222 & 222 n.*; *cf. McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. at 556-57 (Blackmun, Stevens, and O'Connor, JJ., concurring); *id.* at 558 (Brennan and Marshall, JJ., concurring in the judgment).

We referred to the examples in Justice O'Connor's concurrence when we rejected a claim of implied juror bias in a direct appeal. *Tucker*, 243 F.3d at 509. In *Tucker*, during a break in the trial of an Arkansas governor, one of the jurors married a former state prisoner whose request for clemency had been denied by the defendant both directly and by blocking an acting governor's attempt to commute his sentence; the juror had been living with her new husband for some time before the trial. In addition, the juror's new husband was the nephew of a political activist who was demonstrating against the defendant outside the courthouse during trial and had prepared leaflets attacking him, and the juror had twice dated the activist's son. After referring to the examples of "extreme situations" listed in Justice O'Connor's concurrence in *Phillips*, 455 U.S. at 222, we concluded in *Tucker* that the juror was not "related to the facts or parties of this case in a manner that approaches such an extreme situation." *Tucker*, 243 F.3d at 509.

We do not think that Mr. Reed's circumstances fit within any of the examples that Justice O'Connor listed. He was not an employee of the prosecutor: He was the county coroner, and although he was present when the victims' bodies were removed from a well, there is no evidence that he participated in the autopsy or any other aspect of the criminal investigation. Nor was Mr. Reed a "close relative" of anyone related to the criminal case. His wife was a distant relative of one of the victims, and he testified that he did not know the victim; there was no evidence to the contrary. Finally, Mr. Reed was neither a witness to the "criminal transaction" nor "involved" in it.

Some courts have implied bias in circumstances that have the "potential for substantial emotional involvement," *Frost*, 125 F.3d at 379-80. For example, the Ninth Circuit held in a bank robbery case that employees of a different branch of the same bank that the defendant was accused of robbing were presumably prejudiced both because they worked for the same bank and because bank employees generally have a reasonable fear of violent bank robbers, *United States v. Allsup*, 566 F.2d 68, 71-72 (9th Cir. 1977), and in a murder trial where the victim's defense was battered-wife syndrome, the Tenth Circuit imputed bias to a juror who, at the time of trial, was married to a man who had physically abused her. *Burton*, 948 F.2d at 1159.

Here, however, there is no evidence that Mr. Reed or those close to him had been victims of violent crime or had any other life experience that was similar to the facts of Mr. Sanders's case. And though Mr. Reed saw the victims' bodies and performed the funeral for one of them, he did so not as a friend or family member but as part of his regular duties as a coroner and a mortician. In sum, though we may wish in hindsight that Mr. Reed had not been on Mr. Sanders's jury, we cannot say that his presence there was the type of "extraordinary situation" in which the "law conclusively presumes" bias. *Phillips*, 455 U.S. at 222 n.* (O'Connor, J., concurring).

Because Mr. Sanders has not shown that Mr. Reed was biased either in fact or impliedly, he cannot prevail on his ineffective-assistance claim. Even if his counsel's deficient performance resulted in Mr. Reed's presence on the jury, Mr. Sanders has failed to establish that Mr. Reed's presence prejudiced him.

Affirmed.

_____