# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2291

_____

United States of America,

*Plaintiff - Appellee,*

v.

Julius Eric Hayden,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 17, 2014
Filed: July 16, 2014

_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Julius Hayden was charged with unlawful possession of a firearm as a previously convicted felon. Hayden moved to suppress the firearm as the fruit of an illegal search. After an evidentiary hearing, a magistrate judge recommended that the motion to suppress be granted. The government moved for reconsideration and for a supplemental hearing to present additional testimony, and the magistrate granted the

motion. After a second hearing, the magistrate judge recommended denial of Hayden's motion to suppress. The district court[1] adopted the magistrate's second report and recommendation, and denied the motion. Thereafter, Hayden pleaded guilty, reserving his right to appeal the order on his motion to suppress. On appeal, Hayden challenges the magistrate's decision to hold a supplemental suppression hearing and the district court's conclusion that his Fourth Amendment rights were not violated. We affirm.

I.

On December 20, 2011, at approximately 9 p.m., St. Louis police officers Nicholas Martorano and Michael Kegel observed Hayden and James Crockett standing near a vacant house in a high-crime area. Although the officers had no information connecting Hayden or Crockett to any criminal activity, the officers were told, in preparation for their shift, that there had been a noticeable increase in burglaries and robberies involving weapons in the vicinity. Ultimately, the officers stopped and frisked Hayden and found a firearm in his pocket. The events preceding that stop are disputed and were the subject of two evidentiary hearings held by the magistrate judge.

At the first hearing, Officer Martorano testified, but Officer Kegel did not. Martorano reported that, despite the dim lighting, he observed Hayden and Crockett wearing dark clothing and standing relatively close to a vacant home. He testified that both men appeared to be wandering around the residence, that the man closer to the sidewalk was looking up and down the street, and that the man closer to the home

_____

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri, adopting the second report and recommendation of the Honorable Shirley Padmore Mensah, United States Magistrate Judge for the Eastern District of Missouri.

glanced in a window. Based upon these observations, Martorano believed that the two men were about to commit a burglary.

According to Martorano, as the two men began walking down the sidewalk, Kegel pulled the vehicle alongside the men, and Martorano exited the car, shined a flashlight on the men, and yelled "Police!" Hayden turned away from the light and put his right hand into his right jacket pocket. Martorano ordered Hayden to remove his hand from his pocket. Hayden complied. Martorano then frisked Hayden, finding a loaded .22 caliber revolver in Hayden's right jacket pocket.

Based on Officer Martorano's testimony, the magistrate judge found that the officers seized Hayden when Martorano exited the vehicle, shined his flashlight on the men, and yelled "Police!" At that point, the magistrate concluded, the officers did not have reasonable suspicion that Hayden was committing a burglary, so the seizure was unconstitutional. The court found aspects of Martorano's testimony not credible, "given his description of the poor lighting and distance from the two men," as well as his having "made no mention of having seen either subject glancing through a window [on direct examination]." The magistrate therefore recommended that Hayden's motion to suppress be granted.

The government moved for reconsideration of the magistrate's report and for a supplemental suppression hearing. The government proffered additional evidence, namely, photographs demonstrating that there was a streetlight illuminating the street in front of the residence, a photograph showing the distance between the officers and the two men, and Officer Kegel's testimony regarding the events in question. Over Hayden's objection, the magistrate judge granted the government's motion for reconsideration and for a supplemental hearing.

At the second hearing, Kegel testified that the area where the officers observed the two men was high-crime and generally deserted late at night, that it was cold, that

there had been a recent spike in burglaries of vacant homes in the neighborhood, and that the two men appeared to be casing a vacant residence. Kegel stated that while the officers watched the men, a streetlight enabled the officers to see one man look into the window of the house and that the man had crossed a fence around the house so that he could peer inside.

In light of their observations, Kegel testified that the officers decided to initiate a "civilian encounter," that is, to obtain the names and identification of the two men, and to ascertain their motives for being on the street late at night. The officers drove toward the men and stopped at the curb without blocking their ability to continue walking down the sidewalk or cross the street. Kegel testified that Martorano did not exit the vehicle with "any kind of exigency." Likewise, Kegel said that Martorano did not yell "Police!" Instead, Kegel testified that Martorano said the word "police" loudly enough for the men to hear him. Kegel also explained the photographs of the scene that the government had added to the record.

Based on this additional testimony and evidence, the magistrate judge found that Hayden was not seized when Officer Martorano exited the vehicle and said "Police." Rather, Hayden was seized only when he turned his body away from Martorano, reached his hand into his jacket pocket, and complied with Martorano's command that he remove his hand from his pocket. The magistrate determined that the officers had reasonable suspicion to seize Hayden at that latter point. The stop, therefore, did not violate Hayden's Fourth Amendment rights, so the magistrate judge recommended that his motion to suppress be denied.

The district court adopted the magistrate judge's second report and recommendation and denied Hayden's motion to suppress. Hayden pleaded guilty to unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), but reserved his right to appeal the suppression issue. On appeal, Hayden argues that the magistrate abused her discretion by holding

a second suppression hearing. Hayden also argues that the district court erred in denying his motion to suppress evidence of the firearm because the officers found the firearm during an unlawful stop.

## II.

Hayden contends that the magistrate judge erred in holding a second suppression hearing. He complains that the government requested reopening to present previously available evidence without justifying its failure to proffer that evidence at the initial hearing. We review a court's decision to reopen a suppression hearing for abuse of discretion. *United States v. Chavez Loya*, 528 F.3d 546, 555 (8th Cir. 2008); *United States v. Johnson*, 944 F.2d 396, 403 n.5 (8th Cir. 1991). We conclude that the magistrate judge did not abuse her discretion by holding an additional suppression hearing before the district court ruled on Hayden's motion.

Hayden argues that a suppression hearing may be reopened only if a party has acquired newly discovered evidence or challenges a newly relevant legal issue. He contends that under our decision in *Chavez Loya*, 528 F.3d at 555, and in several other circuits, a party moving to reopen a suppression hearing must provide a reasonable and adequate explanation for its failure to provide newly proffered evidence at the initial hearing if the evidence was previously available. *See United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009); *United States v. Kithcart*, 218 F.3d 213, 220 (3d Cir. 2000); *United States v. Dickerson*, 166 F.3d 667, 679 (4th Cir. 1999), *rev'd on other grounds*, 530 U.S. 428 (2000); *McRae v. United States*, 420 F.2d 1283, 1289 (D.C. Cir. 1969). Here, at the second hearing, the government proffered only evidence that was available at the initial hearing, acknowledging that "[i]n retrospect, perhaps [it] should have offered all of this additional information at the original hearing." Hayden argues, therefore, that the magistrate judge abused her discretion by reopening the suppression issue because the government did not adequately explain its failure to offer the evidence at the first hearing.

We decline to adopt Hayden's proposed justification requirement to limit strictly a magistrate judge's discretion to reopen a suppression hearing before submitting a report and recommendation to the district court. The governing statute, 28 U.S.C. § 636(b)(1), provides that a district court, in conducting *de novo* review of a magistrate judge's report and recommendation, "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." Because the district court has discretion to receive new evidence without any special justification while conducting *de novo* review of a magistrate judge's report and recommendation, *see Mathews v. Weber*, 423 U.S. 261, 271 (1976); *United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994), we think it follows *a fortiori* that a magistrate judge likewise may receive new evidence before presenting a final report and recommendation to the district court. Hayden's published authorities, including *Chavez Loya*, concern the authority of a *district court* to reopen a suppression hearing *after* that court has entered a decision on the motion. It is unnecessary here to address the scope of that authority. *Cf. In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 177, 196 (2d Cir. 2008) ("[T]here is no bright-line rule that necessarily and invariably requires the government to provide a reasonable justification for its failure to offer relevant evidence at an earlier suppression proceeding.").

III.

Hayden also argues that the district court erred in denying his motion to suppress on the merits. "We review the denial of a motion to suppress *de novo* but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials." *United States v. Clutter*, 674 F.3d 980, 982 (8th Cir. 2012). Hayden contends that the district court clearly erred by accepting Officer Kegel's testimony on certain points that arguably conflict with Officer Martorano's

testimony, but these were largely credibility determinations that satisfy what is necessarily deferential review on appeal.

On the key legal issue, we agree with the district court that Hayden was not seized when Officer Martorano shined the flashlight on him and said "Police." "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). "So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." *Id*. (internal citation omitted) (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)).

The district court found that the officers pulled their vehicle alongside Hayden and Crockett, shined a flashlight on the subjects, clearly identified themselves as police, and approached the men. The officers did not block the ability of Hayden and Crockett to cross the street, did not touch the men, and did not display weapons. Merely identifying oneself as "Police" does not effect a seizure of a citizen who stops to listen or talk, because self-identification is not a command in the nature of "Police, halt!" or "Stop, in the name of the law!" *See Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion); *United States v. Perdoma*, 621 F.3d 745, 749 (8th Cir. 2010). Likewise, shining a flashlight to illuminate a person in the darkness is not a coercive act that communicates an official order to stop or comply. *See United States v. Mabery*, 686 F.3d 591, 597 (8th Cir. 2012); *United States v. Douglass*, 467 F.3d 621, 624 (7th Cir. 2006). During the initial approach of the police officers, the encounter was consensual.

Hayden eventually was seized when he turned his body away from Officer Martorano, reached his hand into his jacket pocket, and complied with Martorano's command that he remove his hand from his pocket. That seizure, however, was justified under the Fourth Amendment by reasonable suspicion that criminal activity was afoot. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968). The patrolling officers knew

that there had been an increase in burglaries in the area. It was late at night, and the officers knew from experience that it was unusual to find people on the street after dark in this high-crime area. Hayden and Crockett appeared to be casing a house for a burglary: They looked up and down the street; one of the men crossed a fence to get near the residence and looked into the window of the house; as officers approached, Hayden turned away from the officers and put his hand into his pocket as though reaching for a weapon. The totality of the circumstances gave the officers reasonable suspicion to conclude that a crime of burglary was in the offing. *See United States v. Morgan*, 729 F.3d 1086, 1090 (8th Cir. 2013). Consequently, the seizure of Hayden did not violate the Fourth Amendment, and the district court properly denied his motion to suppress the firearm obtained during the stop.

\* \* \*

The judgment of the district court is affirmed.

_____