# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1027
_____

United States of America

*Plaintiff - Appellee*

v.

James Patrick Needham

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota - St. Paul
_____

Submitted: October 21, 2016
Filed: March 31, 2017
_____

Before LOKEN, SMITH,[1] and COLLOTON, Circuit Judges.
_____

SMITH, Circuit Judge.

A jury convicted James Needham of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2), and distribution of child

_____

[1]The Honorable Lavenski R. Smith became Chief Judge of the United States Court of Appeals for the Eighth Circuit on March 11, 2017.

pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). The district court[2] sentenced Needham to two concurrent 120-month sentences and 15 years' supervised release. On appeal, Needham challenges the district court's (1) evidentiary rulings, (2) rejection of his requested definition of "distribute," and (3) denial of his motion for new trial and request for an evidentiary hearing on juror misconduct. For the reasons discussed below, we affirm.

## I. *Background*

In 2010, the National Center for Missing and Exploited Children received complaints of suspected child pornography on various GROU.PS websites. GROU.PS is a social-networking platform that enables users to create online groups through which group members can share images and videos.

Based on these complaints, the FBI began investigating the reported GROU.PS sites. Special Agent Daniel O'Donnell and his team accessed these sites, including one particular group named "boy2kid," using an administrative account. Special Agent O'Donnell verified that boy2kid's default album contained images of child pornography. In September 2010, the FBI executed a search warrant at GROU.PS's headquarters and obtained information concerning boy2kid and other groups suspected of distributing child pornography. The information recovered included videos, images, chat messages, and comments; group members' profile names, e-mail addresses, and Internet Protocol (IP) addresses; and dates and times of activity on the groups.

### A. *Evidence of Possession and Distribution of Child Pornography*

Upon searching GROU.PS, agents discovered GROU.PS had disabled the public version of the boy2kid group. Despite its removal from public access, the data

---

[2]The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota.

for the boy2kid group remained stored on the GROU.PS server. Special Agent O'Donnell accessed the preserved version of the site and took a screenshot of how the boy2kid group appeared to its members.

At trial, the government introduced, and the district court admitted, this screenshot over Needham's foundation and hearsay objections. Special Agent O'Donnell testified that aside from a slight difference in background color, the screenshot accurately represented how the boy2kid group appeared before GROU.PS disabled the public link. Specifically, Special Agent O'Donnell stated the "content and categories [depicted in the screenshot] were exactly the same" as that on the formerly public boy2kid group.

The screenshot of boy2kid group showed that a member known as "rezchub61" uploaded 11 images containing child pornography to the group's default album. Special Agent O'Donnell took a screenshot of rezchub61's profile page, which was admitted over Needham's foundation, hearsay, relevance, and Confrontation Clause objections.

Special Agent O'Donnell testified that GROU.PS provided him the IP address that rezchub61 used when uploading child pornography to the boy2kid group and the e-mail address associated with rezchub61's member account ("rezchub61@yahoo.com"). Using this information, Special Agent O'Donnell subpoenaed the Internet service provider (ISP) associated with rezchub61's IP address and learned that James Needham was the only customer connected to that IP address. Special Agent O'Donnell created a document that listed each of the 11 images that rezchub61 uploaded to the boy2kid group; identified the time and date of each upload; identified the IP address, ISP, and physical location (city, state, country) from which the images were uploaded; and listed the "User Email" associated with each of the uploads as "rezchub61@yahoo.com." This document

("Government's Exhibit 51") was admitted over Needham's foundation, hearsay, relevancy, and Confrontation Clause objections.

Based on the information provided by the ISP, the FBI executed a search warrant and seized Needham's computers.[3] During the search, Special Agent Joe Ogden and another agent interviewed Needham outside his home. At trial, Special Agent Ogden testified that during this interview Needham admitted to possessing child pornography; uploading child pornography to GROU.PS sites (including the boy2kid group); and using both the member name "rezchub61" or "redchub61" and e-mail address "rezchub61@yahoo.com" or "redchub61@yahoo.com."

### B. *Requested Definition of "Distribute"*

During the final charge conference, Needham requested a jury instruction that defined "distribution" as requiring "proof that another person actually downloaded or obtained the images." The district court denied the requested instruction in favor of the Eighth Circuit Model Jury Instruction on the distribution of child pornography. The jury found Needham guilty of both possessing and distributing child pornography. The district court sentenced Needham to two concurrent 120-month sentences and 15 years' supervised release.

### C. *Motion for New Trial Based on Juror Misconduct*

During voir dire, the district judge asked the prospective jurors if they knew any of the attorneys. None of the prospective jurors acknowledged knowing Laura Provinzino, one of the prosecuting attorneys. After the trial, a juror e-mailed Provinzino, stating:

---

[3]The FBI seized a desktop computer, laptop, and floppy disk. Forensic examination of Needham's desktop computer revealed that the GROU.PS website had been accessed 7,000 times; a few hundred references to the boy2kid group; and over 1,300 images and 100 videos containing child pornography—including the 11 images rezchub61 uploaded to the boy2kid group.

-4-

Not sure if you'll actually receive this email, but I was a juror for the James Patrick Needham trial last week. I was the tall one. I recognized your last name, and AFTER our verdict and the trial was over, I hoped that I would run in to you to ask if you (or possibly a spouse) had relatives with ties to Melrose. I'm originally from Melrose, currently live in Avon and work in St. Cloud. *I did NOT do research of any kind during the trial, but when I got home I was curious.*

If you are who I think you are, then Jean Provinzino was your Grandmother??? I also knew that she had a son who was an attorney in St. Cloud, which lead me to believe you might be his daughter. I also pulled up Jean's profile on FindaGrave.com, a website I use in my genealogy research, and saw that a granddaughter, Laura Provinzino was a pallbearer.

So, assuming this is correct, I first wanted to tell you of the great job you did in presenting the case to us (the jury). The evidence was overwhelming. It was certainly an "experience" for me to serve on a Federal Court jury, although the subject matter of the case was not pleasant, to say the least! But mostly I wanted to tell you what a terrific lady your Grandmother was! I had Jean (Mrs. Provinzino) as a 4th grade teacher in Melrose, way back when! I remember always liking her as a teacher, and I think I was one of her best students that year. I remember doing her "times tables" flash cards contest the fastest, and getting a half-dollar coin from her as a prize!

In I believe the years 2000-2001, I had the opportunity & privilege to help her with her banking on more than a few occasions in St. Cloud. I "reminded" her that I was one of her students way back. She said she remembered me being the tallest in the class and being one of her better students. Not sure if she actually did remember or not, but that would be pretty incredible with the hundreds & hundreds of students she had over the years! But we had some nice conversations during those visits. I was saddened to see her obituary a few years ago when she passed away.

Anyways, again she was a wonderful lady. But of course, you already know that!

Needham filed a motion for new trial alleging juror bias or misconduct, maintaining that the juror failed to disclose that he recognized Provinzino's family name during voir dire and would have been dismissed had he disclosed his connection to Provinzino's grandmother. Needham alternatively requested an evidentiary hearing to further explore the juror's bias and reason for failing to disclose this information. The district court determined that Needham failed to establish either bias or misconduct and denied the motion for new trial and request for hearing.

## II. *Discussion*

On appeal, Needham argues that the district court erred by (1) admitting the two screenshots and Government's Exhibit 51 into evidence because these exhibits lacked an adequate foundation, constituted inadmissible hearsay, and violated Needham's right to confrontation; (2) rejecting his requested definition of "distribute"; and (3) denying his motion for a new trial and his request for an evidentiary hearing on juror misconduct.

### A. *Evidence of Possession and Distribution of Child Pornography*

"We review a district court's evidentiary rulings for abuse of discretion." *United States v. Lomas*, 826 F.3d 1097, 1105 (8th Cir. 2016). The admission of evidence can be affirmed on any basis supported by the record. *United States v. Stong*, 773 F.3d 920, 924 (8th Cir. 2014). Even if the court abused its discretion in admitting hearsay, such error is harmless if it did not influence, or only slightly influenced, the verdict. *Lomas*, 826 F.3d at 1105. However, "[i]f the error is of constitutional magnitude, then the government is required to prove the error was harmless beyond a reasonable doubt." *United States v. Campbell*, 764 F.3d 880, 887

(8th Cir. 2014) (alteration in original) (quoting *United States v. Haidley*, 400 F.3d 642, 645 (8th Cir. 2005)).

Authentication is satisfied by "evidence sufficient to support a finding that the item is what the proponent claims." Fed R. Evid. 901(a). "The party authenticating the exhibit 'need only prove a rational basis for that party's claim that the document is what it is asserted to be.' 'This may be done with circumstantial evidence.'" *Jones v. Nat'l Am. Univ.*, 608 F.3d 1039, 1045 (8th Cir. 2010) (citation omitted) (quoting *United States v. Wadena*, 152 F.3d 831, 854 (8th Cir. 1998)).

1. *Screenshots*

Exhibits depicting online content may be authenticated by a person's testimony that he is familiar with the online content and that the exhibits are in the same format as the online content. *See id.* at 1045–46. Such testimony is sufficient to provide a rational basis for the claim that the exhibits properly represent the online content. *See id.* at 1046 ("Buckles testified that he was familiar with the NAU website and . . . . the exhibits were in the same format as the postings found on the website. The court did not abuse its discretion by determining that this testimony was sufficient to 'prove a rational basis' for Jones'[s] claim that the exhibits were NAU job postings." (quoting *Wadena*, 152 F.3d at 854)). Special Agent O'Donnell testified that he personally viewed the boy2kid group and rezchub61's profile page and that the screenshots accurately represented the online content of both sites. Thus, the district court did not abuse its discretion by admitting the screenshots.

Additionally, Needham's assertion that the screenshots constitute inadmissible hearsay is unpersuasive. In *United States v. Manning*, this court upheld the admissibility of chat transcripts as circumstantial evidence associating the defendant with child pornography found on the defendant's computer. 738 F.3d 937, 943 (8th Cir. 2014). The defense argued "that the chats constituted inadmissible hearsay and did not sufficiently identify [the defendant] as the person operating under the

-7-

usernames 'boost_virgin' and 'mem659.'" *Id.* The government presented evidence that the chats were found on the defendant's computer, and the officer who helped execute the search warrant "testified that the defendant admitted adopting the username 'mem659' for his computer account," which was the same username identified in the chats. *Id.* We held that there was sufficient evidence to impliedly identify the defendant as one of the chat participants (which would render any statement of the defendant in the chat transcript admissible nonhearsay) and that the statements of the other participants were admissible as context for the defendant's messages. *See id.*

Here, Special Agent Ogden testified that Needham admitted to having a GROU.PS username of "either rezchub61 or redchub61" and the e-mail addresses "rezchub61@yahoo.com and redchub61@yahoo.com." Thus, even assuming the screenshots contained out-of-court statements, there is sufficient evidence to identify Needham as "rezchub61," rendering rezchub61's statements admissible. *See* Fed. R. Evid. 801(d)(2)(A) (providing that an opposing party's statement that was made in an individual or representative capacity is not hearsay). Even if the screenshots contained inadmissible hearsay, any error in admitting the screenshots would have been harmless and "could not have substantially influenced the jury's verdict here because of the overwhelming evidence provided by the government of [Needham's] guilt." *United States v. Merrell*, 842 F.3d 577, 583 (8th Cir. 2016).

### 2. *Government's Exhibit 51*

Rule 1006 of the Federal Rules of Evidence permits a proponent to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. Summary charts are admissible if "(1) the charts fairly summarize voluminous trial evidence; (2) they assist the jury in understanding the testimony already introduced; and (3) the witness who prepared the charts is subject to cross-examination with all documents used to prepare the summary." *United States*

*v. Hawkins*, 796 F.3d 843, 865 (8th Cir. 2015) (quoting *United States v. Green*, 428 F.3d 1131, 1134 (8th Cir. 2005)). Additionally, parties may use a "'pedagogic device,' such as a summary of witness testimony and/or trial exhibits, to organize testimony and other evidence for the jury." *Id.* "The use of pedagogic devices is within the sound discretion of the trial court, and our review is limited to 'whether the pedagogic device in question was so unfair and misleading as to require a reversal.'" *Id.* (quoting *United States v. Crockett*, 49 F.3d 1357, 1361 (8th Cir. 1995)).

The government introduced a chart containing the information that Special Agent O'Donnell gathered during his investigation of the 11 images that rezchub61 uploaded to the boy2kid group.[4] Needham argues that this chart, Government's Exhibit 51, was improperly admitted into evidence because the chart is a "hybrid summary chart/pedagogical device" containing inadmissible hearsay that is based on review of GROU.PS's company records.

We find no reversible error in the district court's admission of Government's Exhibit 51. Government's Exhibit 51 consists mostly of properly admitted evidence contained elsewhere in the record.[5] Thus, to the extent the chart contains inadmissible hearsay statements derived from Special Agent O'Donnell's review of GROU.PS's

---

[4]The chart lists each of the 11 images uploaded by rezchub61 to the boy2kid group with the following corresponding information for each image: the uploader's user ID number (2489623), profile name (rezchub61), and e-mail address (rezchub61@yahoo.com); name of the group the image was uploaded to (boy2kid); source URL; date and time the image was uploaded; the uploader's IP address and ISP; and the physical location from which each upload occurred (city, region, and country).

[5]The only information listed in the chart that is not readily apparent from the record is the uploader's user ID number, source URL, and the date and time each image was uploaded.

records, the admission of such statements was harmless. *See Lomas*, 826 F.3d at 1105. Therefore, the district court did not err in admitting Government's Exhibit 51.

B. *Requested Definition of "Distribute"*

Needham argues that the district court erred by denying his requested instruction that defined "distribute" to mean "that a defendant's child pornography materials were transferred or downloaded by another person." Because a district court has broad discretion in forming jury instructions, we review the court's instructions for an abuse of discretion. *Lincoln Composites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 461 (8th Cir. 2016). "Our review is limited to determining 'whether the instructions, taken as a whole and viewed in the light of the evidence and applicable law, fairly and accurately submitted the issues to the jury.' We will not reverse a jury verdict unless an erroneous instruction affects a party's substantial rights." *Id.* (quoting *Slidell, Inc. v. Millennium Inorganic Chems., Inc.* 460 F.3d 1047, 1054 (8th Cir. 2006)). The district court relied on Eighth Circuit Model Jury Instruction No. 6.18.2252 and instructed the jury as follows:

> The crime of distribution of child pornography, as charged in Count 2 of the indictment, has three elements, which are:
>
> *One*, that on or about August 4, 2010, the defendant knowingly distributed one or more of the computer image files listed in Count 2 of the indictment, which contained multiple visual depictions of child pornography;
>
> *Two*, that the defendant knew that the visual depictions were of a minor engaging in sexually explicit conduct; and
>
> *Three*, that the computer image files containing the visual depictions had been transported by computer in interstate or foreign commerce.

-10-

"The model instructions 'are not binding on the district courts of this circuit, but are merely helpful suggestions to assist the district courts.'" *United States v. Cornelison*, 717 F.3d 623, 628 (8th Cir. 2013) (quoting *Bady v. Murphy–Kjos*, 628 F.3d 1000, 1004 (8th Cir. 2011)). The district court's instruction given here plainly mirrors 18 U.S.C. § 2252(a)(2), which punishes any person who:

> knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, if—
>
> > (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
> >
> > (B) such visual depiction is of such conduct . . . .

We hold that, "taken as a whole," the district court's instruction "fairly and adequately instruct[s] the jurors on the applicable law." *See Cornelison*, 717 F.3d at 628 (quoting *United States v. Spires*, 628 F.3d 1049, 1053 (8th Cir. 2011)). Needham argues that "distribute" should be given its ordinary meaning, but the court need not define terms of ordinary meaning, *Am. Bank of St. Paul v. TD Bank, N.A.*, 713 F.3d 455, 468 (8th Cir. 2013). Therefore, the district court did not abuse its discretion by denying Needham's requested instruction.

### C. *Motion for New Trial Based on Juror Bias*

"'We review both the district court's handling of allegations of juror misconduct and its denial of the motion for a new trial for an abuse of discretion.'

District courts also have 'broad discretion' regarding whether to conduct evidentiary hearings regarding juror misconduct allegations." *United States v. Muhammad*, 819 F.3d 1056, 1061 (8th Cir. 2016) (first quoting *United States v. Caldwell*, 83 F.3d 954, 955 (8th Cir. 1996); and then quoting *United States v. Johnson*, 495 F.3d 951, 981 (8th Cir. 2007)). To obtain a new trial or evidentiary hearing on the basis of a juror's mistaken response on voir dire, a party must establish that (1) the juror "answered dishonestly, not just inaccurately"; (2) the juror was "motivated by partiality"; and (3) "the true facts, if known, would have supported striking [the juror] for cause." *United States v. Tucker*, 137 F.3d 1016, 1026 (8th Cir. 1998). In contrast, a juror's mere failure to answer correctly whether the juror recognizes a party or attorney is insufficient to establish that the juror answered dishonestly. *See, e.g.*, *Hawkins*, 796 F.3d at 864 ("[I]t was reasonable to infer that Juror No. 2 did not lie about her relationship with [the government witness] but instead simply did not recognize his name or face."); *United States v. Ruiz*, 446 F.3d 762, 770 (8th Cir. 2006) (holding a "juror was being truthful during voir dire when she answered that she did not know any of the defendants" even though the juror subsequently recognized the mother of one of the defendants in the courtroom and realized the relationship); *United States v. Williams*, 77 F.3d 1098, 1100–01 (8th Cir. 1996) (finding no showing of juror misconduct when juror was asked "whether the names of 'these two' defendants meant anything to her" and the juror failed to disclose that her grandson shared the same full name as one of the defendants).

The prospective jurors were asked about their personal knowledge of prosecutor Provinzino during voir dire—not if they recognized Provinzino's family name. So even if the juror immediately recognized Provozino's family name, Needham has failed to establish that the juror answered dishonestly during voir dire. The juror answered honestly in professing not to know Provinzino. The later revelation in the juror's correspondence only showed that the juror confirmed a suspicion of knowing Provinzino's grandparent, which likely did not exist during voir dire.

-12-

Likewise, Needham failed to establish that the juror was motivated by partiality. Because "courts presume that a prospective juror is impartial," establishing juror partiality is a high hurdle. *Moran v. Clarke*, 443 F.3d 646, 650 (8th Cir. 2006). "Essentially, to fail this standard, a juror must profess his inability to be impartial and resist any attempt to rehabilitate his position." *Id.* at 650–51 (holding that the district court did not abuse its discretion in denying a motion to strike jurors that "acknowledged difficulty being impartial, given their strong emotions" on the underlying facts of the case because the jurors "consistently stated that they could be impartial").

Absent a juror's profession of the inability to be impartial, juror bias "may be implied [only] in certain egregious situations." *Manuel v. MDOW Ins. Co.*, 791 F.3d 838, 843 (8th Cir. 2015) (quoting *Sanders v. Norris*, 529 F.3d 787, 792 (8th Cir. 2008)). Such "extreme situations" are limited to those "in which 'the relationship between a prospective juror and some aspect of the litigation . . . [makes it] highly unlikely that the average person could remain impartial.'" *Id.* (ellipsis and alteration in original) (quoting *Sanders*, 529 F.3d at 792). "[E]xamples might include a revelation that a juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *United States v. Tucker*, 243 F.3d 499, 509 (8th Cir. 2001) (quoting *Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring)). Mere distant past acquaintance with an attorney's relative does not qualify as an extreme situation and is insufficient to create a presumption of bias. Thus, the district court did not abuse its discretion in denying Needham's motion for new trial or his request for an evidentiary hearing because Needham failed to establish juror bias or misconduct.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____