# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2262

_____

United States of America

*Plaintiff - Appellee*

v.

Samuel Turner

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: May 15, 2019
Filed: August 16, 2019

_____

Before COLLOTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

At approximately 11:30 p.m. on August 9, 2017, a dispatcher alerted Lincoln Police Department ("LPD") Officer Christopher Monico to a possible disturbance near the trailer court where Defendant Samuel Turner lives. As Monico drove through Turner's trailer court looking for a suspect, Monico observed a woman standing next to a cluster of mailboxes and stopped to talk to her. The woman was

Kimberlie Bridges, an acquaintance of Turner's and the mother of his child. Officer Craig Price arrived on the scene shortly thereafter to serve as backup.

While Monico and Price were talking to Bridges, Turner walked over to them. As Turner approached, Monico shined a flashlight on Turner and asked him about the reported disturbance. Turner asked Monico to lower the flashlight because it was in his face. As Monico did so, he saw that Turner was standing on what looked like a bag containing a large quantity of methamphetamine.

Monico ordered Turner and Bridges to place their hands on a nearby vehicle. Turner did not comply. The officers approached Turner. As they did, Turner reached down, touched the bag of methamphetamine, and attempted to grab it. The officers physically seized him and, after some resistance, handcuffed him and placed him in a cruiser. As they did, Turner stated that the "dope" was not his.

A second bag of methamphetamine was discovered near Bridges. Price secured the bag. He and Monico arrested Bridges. They then searched Turner and found, among other things, a cell phone, which Turner said was his.

A few days later, Monico asked Officer Corey Weinmaster to process Turner's cell phone pursuant to a search warrant. Weinmaster extracted information from the phone, including photographs and text messages. The photographs included one of Turner, two of cash in different denominations, and a screenshot of a text-message conversation between two people. The conversation ended with a message that said, in part, "[S]am said you better bring him his money stop playing games with ppl." The text messages included one sent from Turner's phone which told the recipient to pick up a pool and to "[b]ring that money." A second outgoing message made a reference to the intended recipient exchanging sexual favors for "dope." A third outgoing message said, "Hey this is sam calling see if you got that money."

Turner was indicted on October 17, 2017, and charged with knowingly and intentionally possessing with intent to distribute five or more grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1). He subsequently pled not guilty at an initial appearance.

Turner filed a motion "to suppress [his] stop and subsequent arrest." He claimed that Monico and Price lacked a reasonable suspicion to detain and question him when they stopped near his house to investigate the disturbance. A magistrate judge conducted a suppression hearing, finding that: (1) the officers had not seized Turner when they questioned him about the disturbance; and (2) they had a right to detain Turner when they found what looked like a bag of methamphetamine under his foot. The district court,[1] at the magistrate judge's recommendation, denied the motion.

Turner also filed a motion requesting that the court issue a subpoena duces tecum. Turner sought "investigative reports and materials prepared by [the LPD]" about "calls" officers made to his "home at the time of his arrest," "calls" they made at his home over "the two days prior" to his arrest, and "calls" they made "to [his] trailer court or [the] immediately surrounding area." Turner claimed that the reports would provide "exculpatory evidence" because they would show that he had not been trafficking drugs and that someone else may have dropped the bag of methamphetamine. The district court denied Turner's motion for a subpoena after a hearing.

The district court then held a three-day jury trial in February 2018. Monico and Price testified about the events of August 9, 2017, as described above. A forensic scientist testified that the bag found under Turner's foot contained more than thirty

---

[1] The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

grams of actual methamphetamine. Weinmaster described how he extracted materials from Turner's phone and what he extracted. Over Turner's objections—Turner claimed that the exhibits consisted of inadmissible hearsay and were not properly authenticated—the photographs and text messages were admitted into evidence. Weinmaster stated that by looking at the exhibits alone, he could not tell whether the pictures originated on Turner's phone or were sent to it. Weinmaster could, however, tell that the text messages had been sent from the phone. He and two officers from the LPD's drug unit testified that the photographs and text messages were significant because they contained images and language often found on drug dealers' phones.

Other officers described an interview they conducted with Turner after he was arrested and had waived his rights under Miranda v. Arizona, 384 U.S. 436 (1966). The officers described how Turner confessed to being a methamphetamine user and told them that they might find evidence of people contacting him about drugs on his cell phone. Yet another officer testified that the amount of methamphetamine found under Turner's foot was "a seller quantity of methamphetamine."

At the conclusion of the government's evidence, Turner moved to dismiss, but the district court denied his motion. Turner called witnesses who did not materially refute the evidence proffered by the government[2] and then moved for a judgment of acquittal. The district court denied the motion and instructed the jury. The jury deliberated and returned with a guilty verdict. A few months later, the district court sentenced Turner to 360 months' imprisonment and eight years of supervised release. Turner timely appealed.

---

[2]One of Turner's witnesses did offer an exculpatory explanation for the text that referred to picking up a pool. The witness's testimony, however, did not contradict Monico's and Price's description of events the night Turner was arrested nor any of the other testimonies given.

Turner argues that the district court erred in denying his motion to suppress. After de novo review, see United States v. Hayden, 759 F.3d 842, 846 (8th Cir. 2014), we disagree. An officer may generally approach an individual and ask him questions, even when the officer does not have a basis for suspecting that the individual has committed or is committing a crime, so long as the officer "do[es] not convey a message that compliance with [his] request[] is required." United States v. Cook, 842 F.3d 597, 600 (8th Cir. 2016) (quoting Florida v. Bostick, 501 U.S. 429, 435 (1991)). Furthermore, if in the process of questioning the individual the officer develops a reasonable suspicion or probable cause to believe that a crime is being committed by that individual, the officer may take further, reasonable action to confirm or dispel that suspicion or probable cause. See Hayden, 759 F.3d at 847 (holding that officers did not violate the Fourth Amendment when they seized and searched a man after a consensual encounter because they had developed a "reasonable suspicion that criminal activity was afoot"). That is exactly what happened here. Moreover, nothing in the record suggests Officers Monico and Price did anything while they were questioning Turner to convey the message that his compliance was required. Cf. id. ("[S]hining a flashlight to illuminate a person in the darkness is not a coercive act that communicates an official order to stop or comply."). Consequently, the district court did not err in denying Turner's motion to suppress.

Turner likewise argues that the district court erred in denying his motion for a subpoena duces tecum. We review such denials for an abuse of discretion. United States v. Bailey, 700 F.3d 1149, 1152 (8th Cir. 2012). A party requesting a subpoena duces tecum "must identify the documents [requested] with adequate specificity and show that the documents are relevant and admissible." United States v. Bradford, 806 F.3d 1151, 1155 (8th Cir. 2015). Turner did not identify the specific reports he sought in his motion for a subpoena. Instead, he broadly asked for "investigative reports and materials" about police "calls" to his "home at the time of" and "for the two days prior" to his arrest as well as to the "trailer court or [the] immediately

surrounding area." We hold, therefore, that the district court did not abuse its discretion in denying the motion.

Turner argues that the district court erred in admitting the text messages and photographs extracted from his phone into evidence. He claims that they lacked foundation because they were not properly authenticated. He also claims that they contain inadmissable hearsay. "[W]e review a district court's evidentiary rulings for an abuse of discretion." United States v. Guzman, 926 F.3d 991, 999 (8th Cir. 2019).

Regarding Turner's authentication argument, we hold that the government met its burden of "produc[ing] evidence sufficient to support a finding" that the items were what the government claimed they were (i.e., text messages and photographs from Turner's phone). Fed. R. Evid. 901(a). Turner said the phone was his. The text messages and photographs were extracted from the phone. Officer Weinmaster testified about the extraction process. And at least one of the texts said "this is sam." These factors together provide a rational basis for believing that the text messages and photographs were Turner's, which is all that is required to clear the low bar for authenticating evidence, see United States v. Needham, 852 F.3d 830, 836 (8th Cir. 2017) ("The party authenticating the exhibit need only prove a rational basis for that party's claim that the document is what it is asserted to be." (internal quotation marks and citation omitted)).

Regarding Turner's hearsay argument, we hold that the text messages and the photographs of Turner and the cash do not contain inadmissible hearsay. The text messages contain statements by an opposing party, which means they are not hearsay. See Fed. R. Evid. 801(d)(2). The photographs of Turner and the cash are images, not statements, so they too are not hearsay. See id. 801(c) ("'Hearsay' means a *statement* that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." (emphasis added)); id. 801(a) (defining the term "statement").

Moreover, even assuming for the sake of argument that the screenshot of the text-message conversation contains inadmissible hearsay, we hold that admitting it was harmless.  See Needham, 852 F.3d at 837 (holding that the admission of certain screenshots "would have been harmless and could not have substantially influenced the jury's verdict . . . because of the overwhelming evidence provided by the government of [the defendant's] guilt" (internal quotation marks and citation omitted)).  The government produced overwhelming evidence that Turner possessed five or more grams of methamphetamine with the intent to distribute.  We therefore decline to reverse on evidentiary grounds.

For similar reasons, we also hold that the jury's verdict was supported by sufficient evidence.  See 8th Cir. R. 47B.  Accordingly, we affirm the judgment of the district court.

_____